**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:26-CV-00387-KDB-DCK**

| | |
|---|---|
| **LAUREN POWERS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SARAH POLUHA,**<br><br>**Defendant.** | **<u>MEMORANDUM AND ORDER</u>** |

**THIS MATTER** is before the Court on Defendant Sarah Poluha's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 3). The Court has carefully considered this Motion and the Parties' briefs and exhibits, including supplemental arguments following a period of jurisdictional discovery. Because the record establishes that Defendant repeatedly communicated with Plaintiff's husband in North Carolina in furtherance of their admitted extramarital affair, the Court will **DENY** the Motion. The Court will also direct the Parties, who have now learned much about the strengths and weaknesses of their respective claims and defenses, to conduct an early mediation to determine if this matter can be resolved without more litigation.

## I. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) seeks to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). *See McClure v. Charlotte-Mecklenburg Bd. of Educ.*, No. 320-CV-00005-KDB-DCK, 2022 WL 317641, at *2 (W.D.N.C. Feb. 2, 2022). A party invoking federal court jurisdiction has the burden of establishing by a preponderance of the evidence that personal jurisdiction exists over the defendant. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.

1989). "Mere allegations of in personam jurisdiction are sufficient for a party to make [a] prima facie showing." *Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990).

The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." *IMO Indus., Inc. v. SEIM S.R.L.*, No. 3:05-CV-420-MU, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant." *Id*. In deciding whether the plaintiff has made a prima facie jurisdictional showing, the Court must construe all allegations and evidence available relating to the issue of personal jurisdiction in the light most favorable to the plaintiff. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *Hemphill v. Bernard*, No. 3:24-CV-00286-KDB-SCR, 2024 WL 3761274, at *1 (W.D.N.C. Aug. 12, 2024). Yet, if the Court affords the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments[1]—as it has done here—it must hold the plaintiff to its burden of proving facts, by a preponderance of the evidence, that demonstrate the court's personal jurisdiction over the defendant. *See Grayson*, 816 F.3d at 268.

[1] Also, if a court requires the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it must conduct an "evidentiary hearing." *Grayson*, 816 F.3d at 268 (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 n. 5 (4th Cir.2005) ("[P]laintiff[s] must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.")). However, an "evidentiary hearing" does not automatically involve or require live testimony. *Id*.; *see also* Fed.R.Civ.P. 43(c) (providing that courts may "hear" motions "on affidavits or . . . wholly or partly on oral testimony or on depositions"). Accordingly, by giving the Parties the opportunity to conduct jurisdictional discovery and present that evidence along with their legal arguments, the Court has held the requisite "evidentiary hearing."

There are two types of constitutionally permissible personal jurisdiction—general and specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction). General jurisdiction "requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (internal quotations omitted).

A court may exercise specific jurisdiction over a nonresident defendant if doing so comports with both the forum state's long-arm statute and the Fourteenth Amendment Due Process Clause. *See, e.g., Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). In North Carolina, where the long-arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause, "the statutory inquiry merges with the constitutional inquiry." *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Under the Due Process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

At issue in this motion is specific jurisdiction. In analyzing due process requirements for asserting specific jurisdiction, the Court must consider, in order, "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir.

2002)); *see 1CAPAPP, LLC v. Jordan Christian*, No. 3:25-CV-00993-KDB-DCK, 2026 WL 1983712, at *1–2 (W.D.N.C. July 9, 2026).

## II. FACTS AND PROCEDURAL HISTORY

In this lawsuit, Plaintiff contends that Defendant is liable for the harm caused by an extramarital affair she had with Plaintiff's now-former husband, William Powers ("Mr. Powers"). Specifically, Plaintiff alleges that Defendant, one of his co-workers, enticed him into a romantic relationship that "alienated his affection" and caused her emotional distress, in part through communications into North Carolina. *See* Doc. No. 1-1.

Plaintiff, in her verified Complaint, alleges the foundational elements of a North Carolina common law cause of action for "alienation of affection"; that is, prior to the affair Plaintiff and Mr. Powers "were happily married with a genuine love and affection existing between them," *id*. at ¶¶ 11-14, 37, and Defendant maliciously alienated that affection. *Id*. at 38-40; *see Ammel v. Sinema*, No. 1:26-CV-38, 2026 WL 2620401, at *5 (M.D.N.C. Sept. 4, 2026) (citing *Fish v. Stetina*, 297 N.C. App. 733, 739, 913 S.E.2d 236, 241, *review dismissed, cert. denied,* 915 S.E.2d 168 (N.C. 2025) (listing the elements of a claim for alienation of affection as "(1) there was a marriage with love and affection existing between the husband and wife; (2) that love and affection was alienated; and (3) the malicious acts of the defendant produced the loss of that love and affection.").

In response to the Complaint, which she removed to this Court, Defendant filed a Motion to Dismiss for lack of personal jurisdiction, arguing that her sexual conduct with Mr. Powers took place only in New York (where she resides) and on two business trips outside North Carolina. *See* Doc. No. 4 at 9. Further, she asserts that it was Plaintiff's husband who pursued the relationship, telling her that his marriage was already broken and "open." *Id*. at 5-9. And she testifies that she

told Mr. Powers repeatedly that she did not want to be in a serious, committed relationship with him. *Id*. at 8-9.

In support of her contention that there was no existing "happy marriage," Defendant cites Plaintiff's divorce petition, which alleges that "[d]uring the course of the marriage, Husband committed "indignities [other than the affair with Defendant] . . . so as to render her condition intolerable and her life burdensome"; "Husband was emotionally abusive to Wife throughout the marriage"; and "Husband has been financially abusive through the course of the marriage." Doc. No. 3-1 at ¶ 33. Defendant has also offered into evidence two texts from Plaintiff to Mr. Powers, dated September 30, 2024 (months after the affair began in February 2024). The first purportedly describes the "rules" of their "open" relationship, including "not involving outside relationships with the kids," and the second acknowledges Plaintiff's knowledge of Defendant, to wit, "say hi to your girlfriend for me." Doc. No. 32-1 at 14.

On July 2, 2026, the Court entered an Order allowing Plaintiff to obtain additional jurisdictional discovery from the Defendant. Doc. No. 16. Supplemental briefing followed in which the Parties cited to the Court numerous sensitive texts and emails related to the affair, the state of the marriage, etc. The jurisdictional motion is now ripe for the Court's ruling.

## III. DISCUSSION

Fairness is the touchstone of the jurisdictional inquiry. *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co*., 682 F.3d 292, 301 (4th Cir. 2012). In the context of specific jurisdiction, "the relevant conduct [must] have [only] such a connection with the forum state that it is fair for the defendant to defend itself in that state." *Id*., (citing *CFA Inst.,* 551 F.3d at 292 n. 15. "To satisfy the pleading requirements for specific jurisdiction, a plaintiff must plausibly allege that (1) the defendant purposefully availed [themselves] of the privilege of conducting activity in

North Carolina, (2) plaintiff's claims arise out of those activities, and (3) exercising personal jurisdiction would be fair." *Biglow v. Speaks*, No. 3:24-CV-996-KDB-SCR, 2025 WL 2417731, at *4 (W.D.N.C June 3, 2025). Furthermore, "[t]he Supreme Court has consistently held that the plaintiff cannot be the only link between the defendant and the forum." *Id*. (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

Indeed, it is the "*quality* and *nature*" of the defendant's connections with the forum that justify personal jurisdiction, "not merely the number of contacts between the defendant and the forum state." *Khashoggi v. NSO Grp. Techs. Ltd*., 138 F.4th 152, 161 (4th Cir. 2025) (emphasis in original); *Tire Eng'g & Distribution,* 682 F.3d at 301 ("We do more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state."). Emails and text messages directed at the forum can give rise to specific jurisdiction. *Ammel*, 2026 WL 2620401, at *7; *Lillie v. Guerra*, 559 F. Supp. 3d 464, 473 (M.D.N.C. 2021). In *ALS Scan*, the Fourth Circuit held that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. Still, "[b]rief email exchanges and telephone conversations ... are, alone, 'qualitatively insufficient to show purposeful availment.'" *1CAPAPP, LLC v. Jordan Christian*, No. 3:25-CV-00993-KDB-DCK, 2026 WL 1983712, at *4 (W.D.N.C. July 9, 2026) (quoting *Tire Eng'g*, 682 F.3d at 302).

Here, the Court finds that Defendant's frequent and extensive communications into North Carolina in furtherance of the affair are sufficient to conclude that the defendant has such "minimal contacts" with North Carolina that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *see Ammel*, 2026 WL 2620401, at *7 (finding personal jurisdiction over a defendant accused of "alienation of affection" based on only nine messages because the "messages, considered together, show [defendant] building and furthering a romantic relationship with [plaintiff's husband]—invading the marriage not just while he was away on trips with her but while he was home with his family in North Carolina").

A. Purposeful Availment

Plaintiff argues that Defendant purposefully availed herself of the privilege of conducting activities in North Carolina by Defendant's communications into the state furthering the affair that she contends ended her marriage. "The purposeful-availment test is flexible, and [the] analysis proceeds on a case-by-case basis." *Tire Eng'g & Distrib.,* 682 F.3d at 302.

Applying the *ALS Scan* factors to this case, the Court finds that Plaintiff has made a sufficient showing that Defendant purposefully availed herself of North Carolina.[2] Defendant directed electronic activity into North Carolina by regularly calling and sending texts and emails to Mr. Powers during the affair. And, without reciting the sometimes lurid details, suffice it to say that Defendant's communications were, at least in part, plainly aimed at continuing and furthering

[2] To be clear, the Court does not decide the merits of Plaintiff's claims in this jurisdictional motion. The state of Plaintiff's marriage prior to the affair (as pleaded in Plaintiff's divorce complaint), the "openness" of the marriage and Defendant's role, if any, in ending the marriage are more properly addressed at summary judgment. *See Hartley v. CSX Transp., Inc*., 187 F.3d 422, 425 (4th Cir.1999) (noting the court should not "delve too far into the merits in deciding a jurisdictional question"); *Watkins v. Ashley*, No. 5:13-CV-221-F, 2014 WL 496493, at *2 (E.D.N.C. Feb. 6, 2014) (citing *Hartley*) (same).

the affair while Mr. Powers was in North Carolina with his family, who are sometimes referenced in the messages. Thus, the first and second *ALS Scan* factors are met because Plaintiff has sufficiently established that electronic activity was directed into North Carolina to directly further an affair with a married North Carolina resident.

The last *ALS Scan* factor is also met because, as discussed below, the electronic activity created Plaintiff's potential cause of action for alienation of affection, which is cognizable in North Carolina's courts. Therefore, the Court finds Defendant purposefully availed herself of North Carolina through her electronic activity.

B. Claims Arising out of Activities Directed at the State

Second, the Court finds that Plaintiff's claims arose out of the activities Defendant directed at North Carolina. "The second prong of the test for specific jurisdiction — that the plaintiff's claims arise out of the activities directed at the forum — requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278–79 (4th Cir. 2009) (citing *Burger King*, 471 U.S. at 472). For specific jurisdiction to apply, there must be "an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Defendant argues that the messages she sent to Mr. Powers do not supply a basis for Plaintiff's claims because her sexual conduct with Mr. Powers occurred outside North Carolina, and it was Mr. Powers who was pursuing a committed relationship that she didn't want. However, as explained above (and emphasized by Defendant in her merits arguments), sexual conduct by

itself is insufficient to create a cause of action for alienation of affection.[3] Rather, the focus is on the nature and effect of the alleged alienating relationship. *See Ammel*, 2026 WL 2620401, at *7. Therefore, even though a significant portion of Defendant and Mr. Power's affair occurred outside of North Carolina, there is no dispute that she knew he was married and lived in North Carolina. Thus, the Court finds it is fair to conclude that the claims arise out of activities directed at the state. *Id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the [Supreme] Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction.") (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

C. Constitutional Reasonableness

Finally, the Court holds that the exercise of personal jurisdiction over Defendant is constitutionally reasonable. While Defendant might naturally prefer to defend against Plaintiff's claims in her home forum of New York, there has been no showing that it would be unduly burdensome for Defendant to litigate in this Court (which the contest of this motion reflects). Also, North Carolina has an interest in this action as it involves a North Carolina marriage. In *Malecek v. Williams*, the North Carolina Court of Appeals explained that North Carolina has an interest in "seek[ing] to deter and remedy the harmful effects that result from acts that cause people to break their marriage vows, inflict personal injury on others, and damage the institution of marriage." 255 N.C. App. 300, 306, 804 S.E.2d 592 (2017). Moreover, there is no apparent reason that this action

[3] While not required for a claim of alienation of affection, sexual conduct may, as a matter of law, supply the element of "malicious" interference. *Fish*, 297 N.C. App. at 739, 913 S.E.2d at 241."Malice is conclusively presumed by a showing that the defendant engaged in sexual intercourse with the plaintiff's spouse." *Rodriguez v. Lemus*, 257 N.C. App. 493, 495–96, 810 S.E.2d 1, 3 (2018)

cannot be effectively and efficiently tried in this Court, as Plaintiff has requested. Therefore, the exercise of jurisdiction in this Court will not "make litigation 'so gravely difficult and inconvenient' that [Defendant] unfairly is at a 'severe disadvantage' in comparison to [her] opponent." *See Burger King*, 471 U.S. at 478. Defendant's Motion to Dismiss for lack of personal jurisdiction will, accordingly, be denied.

D. Mediation

By their very nature, Plaintiff's claims are personal and sensitive. The inevitable course of the litigation will require public disclosure of the most intimate details of Plaintiff's marriage and the relationship between Defendant and Mr. Powers. And the ultimate outcome is in doubt for all involved. Still, a compromise resolution of the action may understandably be difficult on both sides. Nevertheless, the Court will order the Parties to engage in an "early" mediation before additional discovery and dispositive motions. After jurisdictional discovery, the Parties have much of the relevant information. And counsel and the mediator can assist the Parties in carefully evaluating the legal strengths and weaknesses of their cases. The Court stands ready to adjudicate the dispute, but the Parties should first see if they can reach a private settlement that may well be preferable to continuing this action to an uncertain public conclusion.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 3) is **DENIED**; and
2. The Parties are directed to conduct a mediation of their dispute within 60 days of the date of this Order, unless that date is further extended for good cause.

**SO ORDERED ADJUDGED AND DECREED.**

Signed: October 13, 2026

Kenneth D. Bell
United States District Judge